United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning, ladies and gentlemen. We have five cases on the calendar this morning. Three patent cases, a case from the Court of Federal Claims, a case from the Court of International Trade. Two cases are being argued. The first is Perfectus Aluminum v. United States, 19-2129. Mr. Beamer, is it? Yes, Your Honor. Please proceed. May it please the Court, good morning. My name is Tom Beamer and I represent the appellant, Perfectus Aluminum. This appeal hinges on the interpretation of an anti-dumping order. Here, Commerce and the CIT interpreted that order to apply to finished merchandise, in this case aluminum pallets, that are fully and finally assembled at the time of importation. In doing so, they both expanded the scope of the order and explicitly modified the exclusion in the order. First of all, isn't the order pretty clear? It pertains to aluminum extrusions and excluded finished merchandise containing aluminum extrusion as parts. But if the extrusions are all aluminum, then they're not as parts and therefore they're not excluded. Why isn't that clear? Your Honor, there are two things in that question. The order makes absolutely clear that there's a fundamental split between aluminum extrusions that are imported into the United States as parts that become a component of some other merchandise after importation and aluminum extrusions that are contained as parts in finished merchandise that's finally and completely assembled at the time of importation. Here, the aluminum pallets at question contain aluminum extrusions as parts that are fully and finally assembled at the time of import, just like an aluminum chair or an aluminum ladder. And the fact that the court below and Commerce added an additional requirement that's not found anywhere in the language of the order itself. And that requirement is that you have to have a non-aluminum extrusion as a part. But there's nothing about the language as parts that talks about the material composition of the part. And for that reason, when you look at the… If there's nothing else there, the aluminum isn't the part, it's the totality. Your Honor, respectfully, that's incorrect. I mean, a ladder is made up of a number of parts that can be all aluminum extrusions, or it can be all plastic, or it can be all steel. The critical issue is whether or not they're separate aluminum extrusions as parts. And when you look at the language that talks about the scope right from the order, it says subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation. That's right from the language of the order. And there's nothing, nothing about an aluminum pallet that becomes part of something else after it's imported into the United States. In fact, this court in the Whirlpool case, which we cite in our paper, expressed… Excuse me? Counsel, hi, thank you for stopping. I just wanted to ask you a question. I understand the point you're making. One question I wanted to ask you that goes directly to that point is I wanted to ask you about what I thought was decent reasoning by the Commerce Department at page J32. And it said an interpretation which would allow products which consist entirely of aluminum extrusions to be excluded from the scope of orders would allow the finished merchandise exclusion to swallow the rule embodied by the scope. And so the additional reason in support of Commerce's as parts interpretation that Judge Rory was asking about, what is your response to that, that point about how your interpretation would swallow the rule embodied by the scope? Thank you, Your Honor. One, it wouldn't swallow the rule because it still requires that the product have multiple parts. The language as parts talks about more than one component of a product. Just like an aluminum ladder has many parts, they may all be made of aluminum. A pallet has multiple parts. They may all be made of aluminum. The distinction the order makes is between finished merchandise, which is finally and completely assembled that contains aluminum extrusions as parts, which the pallet does, the ladder does, the chair does, and an aluminum extrusion that's going to be incorporated into some other product after importation, which is the language I just read from the order. And it's beyond dispute that the pallet is not incorporated into something else after importation. And, Your Honor, the second point I want to make about your question, because it's a question I thought about, is that that issue was specifically addressed and rejected in the Whirlpool case. In the Whirlpool case on page 1306, which is after the Meridian case, which deals with a separate exception that dealt with the finished kit exception, Whirlpool distinguished Meridian. And what Whirlpool said is that, in that case, Commerce found unconvincing the notion that a product made entirely of aluminum extrusions that is unassembled and contains fasteners would be within the scope of the order, and the same product completely assembled at the time of importation would be outside the scope of the order. The exact same argument that they're making here. And this court in Whirlpool rejected that argument. And what the court said is that there's a good reason to treat finished merchandise differently than kits. And what the court said, and this is on page 1310, and I think it directly addresses and rejects the argument that they're making. And I'm going to quote this. Excuse me, I'm sorry. I'm going to quote this because I think the language is so important. And this is found on page 1310 of Whirlpool. We therefore agree with CIT that if Commerce had actually intended to sweep into the scope all finished merchandise consisting solely of aluminum extrusion components and fasteners, it would have done so in the scope language rather than expressly confining its fastener exception to the finished goods kit exclusion, close quote. And so that's the argument Commerce is making here, that the scope of this order was intended to encompass items made up entirely of aluminum extrusions and fasteners, whether they're fully assembled or not. And that is the exact same argument, Your Honor, that Whirlpool rejected. And what Whirlpool said is that... Can I ask you a question, counsel? Sure. I just wanted to ask you a question about Whirlpool. Can you remind me, is that a case that involved a product made exclusively of extruded aluminum components? Your Honor, that was a case that involved a handle and a fastener at the top of the handle. And it was a subassembly that became part of a refrigerator. And it was a handle that would go on certain appliances. And so this exact argument was made and rejected... The question is whether it included non... that's my question, whether it includes non-extruded aluminum components. That's a fastener, Your Honor. Okay, thank you. And so... but the language that I just read from is indicative of why the argument that is being made by Commerce in this case is incorrect. Because what that language says is that if Commerce wanted to include items made up entirely of aluminum extrusions and fasteners, here an aluminum pallet welded together, it's a fastener, it would have done so in the scope section. Rather than limiting it to the exclusion to the exclusion for finished kits. Finished kits have a separate exclusion that has no analog in the finished merchandise section. And that is that it can't... it doesn't get outside the scope just because it has all aluminum extrusions and you include fasteners. And so what the court said in Whirlpool is there's a good reason between distinguishing between products which are fully and finally assembled at the time of importation and kits. Because when the kit comes in, it's easy just to take the extrusion and throw the fastener out. But if it's fully and finally assembled at the time of importation, you've got to go backwards in the manufacturing chain. So that's what Whirlpool specifically addressed and rejected. And here, I just want to emphasize again, there is nothing about the language as parts that talks about what the composition of the part is going to be. And in the Rubbermaid case, which I understand is not binding on this court, but in the Rubbermaid case, they made that exact point. And they said a product can be made entirely of plastic and it's still finished merchandise. Here, the language of the order says, finished merchandise containing aluminum extrusions as parts that's fully and finally assembled at the time of importation. An aluminum pallet, an aluminum chair, an aluminum ladder, check off those boxes. And under the plain language of the order, they're excluded. And the requirement, the additional requirement that commerce is added here, that it has to have a non-aluminum excluded piece as a part, was rejected in the Whirlpool logic that I just read to your honor. And so, when you apply the plain language of this order, when you look at the scope language, which specifically distinguishes between finished merchandise and parts which become a component of something else after it arrives in the United States, it's absolutely clear under that plain logic, that plain language, that an aluminum ladder, an aluminum pallet, an aluminum chair, an aluminum table are final, finished merchandise. They don't become part of something else as long as they're completely and fully assembled at the time of importation. And it doesn't matter, excuse me, you cannot add an additional requirement to that because it's not found in the plain language of the order. The fundamental distinction that's set out in the order, which is reinforced in the exclusion, which only requires two things, that it be fully and finally assembled at the time of importation, and that it have aluminum exclusions as parts, meaning multiple, more than one. And if you think about it this way, that does make sense because that precludes someone from saying, well look, the fence pole itself is a final, completed product. That's our final, no, the fence pole becomes part of the fence. The windowsill becomes part of the window. The aluminum frame becomes part of the frame. But the pallet, the chair, the ladder, don't become part of anything else. They're final and complete at the time of importation. And as a result, they're not within the scope and they're within the exclusion. And the only way commerce could get there was by adding this requirement that it has to have something other than an aluminum exclusion component, which again, on page 1310 of Whirlpool, which came after Meridian, which dealt with the express exclusion that's before the court today, the court rejected the logic of that principle. And I'll reserve the rest of my time. Right on time, counsel, we'll save it for you. Ms. Lee. Good morning, your honors. May it please the court. Perfectus's pallets are made solely from extruded alumina and fit squarely within the aluminum extruded anti-dumping and countervailing duty orders. Perfectus's goods, despite what it may say, meet the plain language of the orders. The pallets are made from series six alloy, produced from an extrusion process in the shape and form of profiles. And the alumina extrusions were cut to length and welded together in the form of a pallet. And the pallets meet all of these physical characteristics, which are provided for explicitly under the orders. In addition, the orders also state that subject extrusions may be referred to by their end use. Here, Perfectus's product is referred to by its end use as a pallet. And such products are within the orders if they otherwise meet the scope definition, which they do, regardless of whether they are ready for use at importation. So aluminum products referred to by their end use can be finished goods. Just because an alumina extruded product may be characterized as having a particular use doesn't deny the fact that it is still aluminum subject to the orders. Now, Council was saying, and quite significant, that its pallets are only made of parts. And I would submit that Council has not read the entirety of the orders, because subject alumina extrusions may be described as parts for final finished products that are assembled after importation, but they also may be described as partially assembled goods or subassemblies, and they may be identified with reference to their end use, like pallets. So the significant point here is that the order covers aluminum extrusions, and we shouldn't forget that. But Perfectus takes issue with this straightforward analysis to argue that its pallets are not subject to the orders. And specifically, Perfectus claims that its pallets are not subject to the orders because they fall within the finished merchandise exclusion. But again, Perfectus's pallets are comprised solely and exclusively of subject aluminum extrusions. The exclusion defines merchandises containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels. So to fall within the finished merchandise exclusion, the product must have both aluminum extruded parts as well as non-aluminum extruded parts. And we know this by looking at the language. In order to give significance to the as parts language as an exclusion, the parts have to refer to both aluminum extruded parts as well as non-aluminum extruded parts. Otherwise, we would be looking at something that would contain aluminum extrusions that are fully and permanently assembled. And as Your Honor recognized, such a reading would be overbroad, and the exclusion would swallow the rule embodied by the order. The words containing, assembled, and as parts read in context necessitates a construction that encompasses both aluminum extrusions and non-aluminum extruded parts. And the reading also comports with the exemplars of the finished merchandise exclusion. Doors with glass or vinyl, picture frames with glass pane and backing material, windows with glass, and solar panels. The commonality among these examples is that they are finished products that obviously contain an extruded aluminum piece along with significant non-aluminum extruded components. And Perfectus' pallets, it cannot be denied, are unlike the exemplars. There are no non-extruded aluminum parts. The product is solely and exclusively comprised of aluminum extrusions. Now, counsel dismisses the case where this court in Meridian Products analyzed and considered the companion finished goods kit exclusion. But it's significant because the analysis applies here. The court recognized that the exclusions involve both aluminum extrusions and non-aluminum extrusions as parts and finished merchandise that is excluded from the order. In fact, it said that the basic divide between the products that contain non-aluminum extrusion parts are excluded versus products that contain only aluminum extruded parts, which are not excluded. And that's significant. With regard to Whirlpool, the Whirlpool case that is referred to, it's like the Whirlpool case involved a piece of aluminum along with non-extruded aluminum pieces, two plastic end caps, along with some fasteners to attach those end caps. And the issue there was whether or not the fastener's language from the finished goods kit exclusion could be applied to the finished merchandise exclusion. And the court concluded that it could not. So the quote that counsel refers to at page 1310 merely refers to that. What it's saying is that the fastener's language would have been put into the finished merchandise exclusion if they wanted the fastener's language to be there. It doesn't say anything else about it only being finished merchandise and without regard to what the material of the parts is. Getting back to the finished merchandise exclusion, there's also additional support found in Exhibit I-5 to the petition. It's similar to the orders in that it identifies non-subject merchandise as fully assembled finished goods containing aluminum extrusions and lists windows, doors, and solar panels, which is very much like the exemplars in the exclusion. And additionally, Commerce's scope rulings also support this interpretation and shows that Commerce has been consistent in applying the finished merchandise exclusion to products that have some components besides aluminum extrusions. So, in plain language, as counsel says, where it claims that it does not encompass its pallets, absolutely does. In fact, again, we have to remember that this is an aluminum extrusion order. And so it's going to encompass aluminum extrusions. And it encompasses not only parts, but partially assembled merchandise as well as goods that could be described by their end use, which absolutely include finished merchandise. So, in conclusion, Perfectus's pallets are constructed only of in-scope aluminum extrusions which are covered by the plain terms of the orders. And we ask that the court uphold the trial court's decision affirming Commerce's determination. Your honors have no other questions. Pardon? What about the fact that the ruling covers products not in production? So, the ruling, first of all, they are, the reading of in production, currently in production is taken by counsel as being a literal in production. So, Commerce has a practice of not issuing advisory opinions on hypothetical products. However, this is neither of those. It's not a hypothetical product. It has been imported. It has been produced. It's like the fact that it isn't actually in production at the moment that the scope ruling is issued is of no consequence because we are looking at actual products. And there is, it would be burdensome and overbroad and it would be untenable for Commerce to have to constantly monitor exactly a point in time at which a company decides Perfectus because the scope ruling applies to all exporters and producers of whether or not they're actually producing something. So, the key here is… Presumably, they wouldn't be arguing about it. It's purely hypothetical. Presumably, Your Honor. It's like here we absolutely know that they have imported it. It's like they, it's like the record shows that in 2000, a couple of entries in 2012, they absolutely imported it. Their predecessor company did do that and they themselves have admitted that they've imported it. So, it is absolutely not a hypothetical product. And so, Commerce absolutely was correct in issuing the scope ruling. I hope that answers your question, Your Honor. Yes. Thank you. So, again, Perfectus' pallets are comprised solely and exclusively of in-scope aluminum extrusions. They clearly fall within the order. And we ask that the court uphold the trial court and Commerce's determination. If Your Honors do not have any further questions, I'll end it here. Thank you, Counsel. Mr. DeFrancesco has a couple of minutes representing the committee, I gather. Yes, Your Honor. Thank you. And Your Honors, may it please the court, Robert DeFrancesco, on behalf of the Defendant Appellees, Aluminum Extruders, Fair Trade Committee. I just want to make two quick points. First, with respect to the Whirlpool case, an earlier question from Judge Stoll asked whether those appliance handles contained non-extruded parts. The answer, I believe, that was given was incorrect. So there were two appliance handle cases that were before the court at that time, the Whirlpool case that we just talked about, and the Meridian Products 830F3-1272. In that Meridian case, Counsel for Meridian and Meridian itself had conceded that those end caps for its products functioned as fasteners, and Commerce based its decision on that case. In the Whirlpool case that we're discussing now, Counsel for Whirlpool never conceded that its end caps were, in fact, fasteners. In fact, they said it functioned as something other than a fastener. And the court, in that opinion, never actually expressly reaches the conclusion that those end caps were, in fact, fasteners. And as you just heard from Ms. Lee, what the court was doing was addressing whether that fastener exception that existed in the kit language existed in the finished merchandise exception, and it concluded it did not. But it never explicitly determined that those end caps were, in fact, fasteners. So point number one. Point number two, I'd like to go back to the Meridian, the other Meridian case that we've been talking about, which is the trim kit case. And if the court were to interpret the language that Perfectus, the finished merchandise exception that Perfectus is advocating for, you would have a scenario where the trim kits that this court found to be included, which were pieces of extruded aluminum, a wrench to attach the extruded aluminum to the appliance frame, and then instructions would be included if it came in kit form and unassembled. But if the frames were completely assembled and entered, and the only thing that happens to those frames is they're attached to the frame that the appliance goes into, it's like their pallet that they're describing would be excluded. And you'd wind up with this logical inconsistency, which is why the court in that case talked about where you have products that are purely extruded aluminum components that enter, they're covered by the order just as these pallets are. And the fact of the matter is we're not even sure that these are, in fact, legitimate pallets, but putting that aside, I think the language of the order is clear that this product is subject for all the reasons you heard from Ms. Lee. So with that, I'm happy to answer any questions the court has, but we'll conclude our presentation. Thank you, counsel. Mr. Beaver has some rebuttal time. Yes, thank you, Your Honor. I'll make three quick points. While counsel is correct that in the Whirlpool case, the court did not reach the issue as to whether or not the caps were fasteners or not, because Commerce took the position that they were, in fact, fasteners. And counsel have both ignored the predatory language to the exemplars. That language, which I'll read again, says, subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation. All of the exemplars that are then listed meet that fundamental characteristic, but the pallets do not. An aluminum chair does not. An aluminum ladder does not. They are fully and finally assembled at the time of importation, and they do not become part of something else. And the argument that counsel or the committee made that you could have a kit that would be treated different than finished merchandise, based solely on the fact that one is imported completely assembled, is exactly what this court in Whirlpool said the order sets up. The case in Whirlpool rejected that exact argument, and they said specifically on page 1310, that if Commerce intended to include within the scope of these orders all finished merchandise made just of aluminum extrusion and fasteners, it would have done so in the scope section, and it did not do so. That rejects the argument that finished merchandise should be treated exactly the same as finished kits, which is the meridian logic that the Pelley's and the lower court relied on, which was rejected by Whirlpool. And again, this court said specifically that there's a good reason to treat finished merchandise differently that's fully and finally assembled than kits. There's a logical rationale for it, because if it's fully and finally assembled at the time of importation, in order for it to go back to extrusions as a part, it would have to go backwards in the manufacturing cycle. So Whirlpool explicitly rejects the argument that everyone here, including Commerce, is relying on. It's not within the scope if it's made entirely of aluminum extrusions, if it's fully and finally assembled, and it doesn't become a component of anything else, like a picture frame, a window frame, a solar panel. A pallet is the end product, and that's the distinction. Thank you. Thank you, counsel. We have the arguments and cases taken under submission.